UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* EDWARD HARRIS,<br><br>                    Plaintiff,<br><br>v.<br><br>ALAN RITCHEY, INC., et al.,<br><br>                    Defendants. | No. C00-2191Z<br><br>ORDER |

## BACKGROUND

In December 2000, Plaintiff relator Edward Harris ("Harris") filed this qui tam action alleging violation of the False Claims Act. Harris alleges that his former employer, Alan Ritchey, Inc. ("ARI"), engaged in a scheme to double bill the United States Postal Service (the "Postal Service") for work that it performed, to bill the Postal Service for work that was improperly performed, and to bill the Postal Service for work that was not performed. See Second Am. Compl., docket no. 84, ¶ 4.57.

The Second Amended Complaint alleges that Harris was employed by ARI, a company awarded various contracts with the Postal Service to repair mail transport

ORDER 1–

equipment. Id., ¶¶ 3.1, 3.2. In December of 1999, Harris was told by a fellow employee, Ms. Yellovich, that she had been falsifying production numbers and was frightened about being caught and fired, or sent to jail. Id., ¶ 4.12. Ms. Yellovich claimed to have been directed to replacard pallets of mailbags in a deliberate scheme to fraudulently double bill the Postal Service. Id., ¶ 4.13. Harris claims to have reported the fraudulent activity to Marty Senack, Vice President of ARI's mail transport equipment service centers ("MTESCs"), and later to his supervisor, Mr. Pyne. Harris alleges that Mr. Pyne admitted that ARI had been engaging in fraud since the plant opened; Mr. Pyne also allegedly told Harris that he could no longer be trusted because of his disclosure of the fraudulent practices to Mr. Senack. Id., ¶¶ 4.18, 4.20-23. In his Second Amended Complaint, Harris claims the fraudulent billing did not apply just to mailbags, but to other types of rolling stock equipment; Harris also claims the fraud was not limited to ARI's Auburn, Washington operations, but was practiced at other MTESC facilities around the country. Id. ¶ 4.37.

The United States investigated the claims and settled with Defendant Dyncorp, who was dismissed from this lawsuit on June 12, 2006. See Order of Dismissal, docket no. 64. Plaintiff-relator Harris now continues his case against ARI without the government's participation. He filed his Second Amended Complaint, docket no. 84, on September 8, 2006. ARI answered on September 22, 2006.

Now before the Court is ARI's Motion to Dismiss, docket no. 85. The Court previously granted a Motion to Dismiss by ARI, docket no. 60, with leave to amend. ARI asserts that the deficiencies are still present in Plaintiff's Second Amended Complaint.

## DISCUSSION

The False Claims Act imposes liability on any person who attempts to defraud the federal government of property or money. 31 U.S.C. § 3729 ("§ 3729"). Federal Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "To

ORDER 2–

comply with Rule 9(b), allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)).  These heightened pleading requirements may be relaxed under certain limited circumstances, including when the information is within the opposing party's knowledge. Neubronner, 6 F.3d at 672.  ARI alleges that Plaintiff fails to satisfy the pleading requirements of Rules 9(b) and 12(b)(6) for several asserted claims, and asks the Court to dismiss those claims with prejudice.

The parties agree that Rule 9(b) applies to False Claims Act actions, but disagree as to how the standard should be applied and when a "relaxed requirement" rule should apply. Wright and Miller notes that "[w]hen the pleader is asserting that third persons have been defrauded, the pleader may lack sufficient information to be able to detail the claim at the outset of the action and less particularity should be required." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1298 (3d ed. 2004).  However, while a "relaxed requirement" may not require a plaintiff to "allege, in detail, all facts supporting each and every instance" of fraud, the Complaint must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." See United States v. SmithKline Beecham Labs., 245 F.3d 1048, 1051-52 (9th Cir. 2001) (citing Neubronner, 6 F.3d at 671).

**A.  Claims under § 3729(a)(2).**

Section 3729(a)(2) prohibits submission of false records or statements, when the submission of the record or statement is done in an attempt to get a false claim paid. United States v. Southland Management Corp., 326 F.3d 669, 675 (5th Cir. 2003).  A claim under § 3729(a)(2) requires that Plaintiff allege the Defendant made, used, or caused to be made or

ORDER  3–

used, a "false record or statement to get a false claim or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). The Plaintiff must plead both a false "record or statement" and payment or approval of a false claim, and there is no liability for a false statement unless it is used to get false claim paid. Southland Management Corp., 326 F.3d at 675.

Plaintiff's Second Amended Complaint alleges various improper actions and provides information about false claims that were submitted to the United States. See, e.g., Second Am. Compl., docket no. 84, ¶ 4.41. The Defendant asserts that the Second Amended Complaint fails to provide any detail regarding a "false record or statement" that was used to get a false or fraudulent claim paid by the United States. This argument is contradicted by the substance of Plaintiff's claims. The Second Amended Complaint alleges in substantial detail a fraudulent scheme whereby mail transport equipment ("MTE") units were "replacarded" and improperly processed as a unit of production. Plaintiff's Second Amended Complaint alleges in detail that ARI fraudulently replacarded MTE units so it could bill the United States for work ARI employees did not perform. Plaintiff's allegation regarding the preparation of false records and documents in connection with replacarding states a claim under § 3729(a)(2) because it alleges the use of false records (i.e., placards) to substantiate allegedly false and fraudulent claims. See, e.g., Second Am. Compl., docket no. 84, ¶¶ 4.7-10, 4.41. Accordingly, Defendant's Motion to Dismiss Plaintiff's Claims under § 3729(a)(2) is DENIED.

**B.     Claims under § 3729(a)(3).**

Section 3729(a)(3) makes unlawful a "conspiracy" to defraud the Government by getting a false or fraudulent claim paid by the United States. Plaintiff asserts a claim under § 3729(a)(3) based on his personal knowledge of ARI's alleged conspiracy, and its proximity to other mail transport equipment service center ("MTESC") contractors. See, e.g., Second Am. Compl., docket no. 84, ¶ 4.55-57. The Defendant alleges that Plaintiff's claim under §

ORDER  4–

3729(a)(3) must be dismissed because it fails to plead the facts or circumstances of the conspiracy, and fails to provide the Defendant with notice of what acts are alleged to be a part of the fraudulent conspiracy. The Defendant further alleges that this failure to comply with Rule 9(b) requires dismissal of claims under § 3729(a)(3). Plaintiff counters that Rule 9(b) does not apply.

Plaintiff notes that at least one out-of-circuit decision holds that under § 3729(a)(3) while "the underlying fraud allegations must comply with the heightened pleading requirements of Rule 9(b) . . . the allegations of conspiracy need to comply with the notice pleading requirements found in Rule 8(a)." United States ex rel. Barlett v. Tyrone Hosp., Inc., 234 F.R.D. 113, 123 (W.D. Pa. 2006). However, the Ninth Circuit has held that a fraudulent conspiracy pleading must comport with Rule 9(b). See, e.g., Vess v. Ciba-Geigy Corp, U.S.A., 317 F.3d 1097, 1108 (9th Cir. 2003).

In this case, the Plaintiff fails to allege fraudulent acts by anyone other than ARI and its employees. The Second Amended Complaint addresses other MTESC contractors only in a few short paragraphs, none of which provide any substantive information about a conspiracy. Second Am. Compl., docket no. 84, ¶ 4.55-57. Paragraph 4.55, for example, alleges merely that

> The other MTESC Contractors engaged in substantially the same conduct as ARI. The other MTESC Contractors submitted false claims involving double billing, billing for work that was improperly performed and billing for unperformed work.

Paragraphs 4.56 through 4.60 of the Second Amended Complaint contain similar conclusory allegations that the "other MTESC Contractors" joined in a course of conduct to double bill, to bill for work improperly performed, and bill for work that had not been performed. Second Am. Compl., docket no. 84, ¶ 4.55-60. Completely absent are facts or allegations with specific details relating to improper conduct. The Plaintiff's allegation of conspiracy may essentially be reduced to an argument of association, i.e., the various MTESC Contractors were acquainted with one another, and "if one person devised a way to

ORDER  5–

'beat the system' it was likely that other similarly situated persons would figure out and implement the same tactic." Id. ¶ 4.56.[1] The Federal Rules require a level of detail far beyond Plaintiff's Second Amended Complaint. To substantiate a claim for fraudulent conspiracy under § 3729(a)(3), Plaintiff must plead the facts and circumstances relating to the conspiracy; more is required to satisfy the heightened pleading requirements of Rule 9(b). Accordingly, Plaintiff's claims pursuant to § 3729(a)(3) are DISMISSED.

**C.     Claims related to Containers and Rolling Stock.**

Defendant ARI asserts that Plaintiff's § 3729 claims which relate to "containers" or "rolling stock" are deficient and should be dismissed.

**1.     Pleading Requirements of Rule 9(b).**

Plaintiff claims that containers and rolling stock were fraudulently welded or repaired by ARI employees when repairs were not necessary. See Second Am. Compl., docket no. 84, ¶¶ 4.44-51. Defendant ARI contrasts the extensive detail provided by Plaintiff for the alleged fraudulent replacarding of palletized goods, id. at ¶¶ 4.5-43, with the sparing detail provided with regard to alleged fraudulent welding and repairs for containers and rolling stock. Id. at ¶¶ 4.44-51. ARI argues that Plaintiff has failed to meet the heightened pleading standard of Rule 9(b). The substance of Plaintiff's allegations are set forth in the Second Amended Complaint:

- ■ [R]epairs to rolling stock and other equipment either were not being made (but the Postal Service was being billed and paying for repairs) or were performed improperly. Id. ¶ 4.44.

- ■ ARI instructed its employees to make unnecessary repairs to non-motorized equipment such as rolling containers and mail sorting equipment. ARI also instructed its employees to intentionally damage such equipment, necessitating repairs which would otherwise have been unnecessary. Id. ¶ 4.45.

---

[1] Plaintiff Harris also alleges that all initial manager training occurred at MTESC Contractor "NewBreed." However, Plaintiff fails to show that the training is, in any way, implicated in his allegations of fraud.

ORDER  6–

1  However, also attached to Plaintiff's Second Amended Complaint and "incorporated herein
2  by reference" is the Declaration of Scott Melton.  Second Am. Compl., docket no. 84, Ex. 7.
3  Melton was a mechanic and welder for ARI.  Id.  The Melton Declaration provides sufficient
4  detail regarding the alleged fraudulent repair scheme (which is otherwise lacking in the
5  Complaint) including the performance of unnecessary work at the Government's expense.
6  See id. ¶ 15 (". . . mechanics and welders were pressured to charge the USPS for work that
7  was not performed at all.").  Accordingly, the claims related to containers and rolling stock
8  should not be dismissed pursuant to Rule 9(b).  However, ARI raises a second challenge
9  under the False Claims Act.

### 2. Original Source and First-to-File Bar.

ARI asserts that Plaintiff's claim related to containers and rolling stock should be dismissed because the Court lacks subject matter jurisdiction over the claim.  ARI alleges that Plaintiff was not the "first to file."  Section 3730(b)(5) of the False Claims Act

> precludes any person from filing a subsequent "related action based on the facts underlying the pending action" when a qui tam action already has been filed.  This is known as the first-to-file bar.

Campbell v. Redding Medical Center, 421 F.3d 817, 818 (9th Cir. 2005); 31 U.S.C. § 3730(b)(5) ("When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.").  In the Complaint and First Amended Complaint filed in another case pending before this Court, United States, ex rel. Jorgenson v. Alan Ritchey, Inc., Civil No. 01-588TSZ, plaintiff-relator Cecil Jorgenson identified claims relating to deficient and improper repairs to rolling stock for which payment was made by the Postal Service.

The Defendant alleges that Plaintiff's claim related to containers and rolling stock is barred because his original Complaint did not allege any claim relating to improper repair of containers and rolling stock.  See 31 U.S.C. § 3730(b)(5).  A review of the Jorgenson Complaint supports Defendant's argument that Plaintiff-relator Harris was not the first to file

ORDER  7–

claims based on the alleged deficient and improper container and rolling stock repairs. The original Complaint in this action, filed on December 28, 2000, contains no mention of claims relating to containers or rolling stock. See Compl., docket no. 1.

In Response, Plaintiff urges that the Complaint mentions containers and rolling stock: "The orders which Alan Ritchey fills and the work it performs consists, in part, of sorting mailbags and repairing rolling containers." Compl., docket no. 1, ¶ 4.4. However, a contract for "sorting mailbags and repairing rolling containers," standing alone, has nothing to do with fraudulent conduct, and the mere holding of a contract for such activities is not actionable under § 3729. By contrast, the Complaint and First Amended Complaint in Jorgenson provides detail regarding the alleged deficient and improper repairs to rolling stock. E.g., Jorgenson, Civil No. 01-588TSZ, docket no. 15, ¶¶ 9-10 (May 3, 2002). The Amended Complaint in this case, docket no. 30, was filed on July 12, 2004, and first provided details of fraudulent rolling stock repairs. See Am. Compl., docket no. 30, ¶ 4.21. It appears that Plaintiff in this case relied upon the details provided by the plaintiff in Jorgenson. See Second Am. Compl., docket no. 84, Ex. 8 (Jorgenson Compl.). However, the Amended Complaint in this case was filed two years after the rolling stock allegations were detailed in Jorgenson.

Plaintiff argues that he was the first-to-file because his original Complaint (without the rolling stock allegations) was filed first, and later amended to include the allegations. See Pl.'s Resp., docket no. 87, at 7. Plaintiff also claims he was an original source of the information, in spite of the fact it was not included or referenced in the original Complaint. Id. Plaintiff claims that "[t]he claims relating to ARI's fraudulent repair of containers and rolling stock is (sic) pleaded in sufficient detail and Mr. Harris is an original source." Id. at 7. However, while Mr. Harris might have been an original source of the information, he was not the first to file a lawsuit based on the alleged deficient repairs of containers and rolling stock.

ORDER  8−

Plaintiff may not simply amend his Complaint to include the allegations in the Jorgenson Complaint, and bypass the first-to-file requirements of § 3730(b)(5). Amending the Complaint to include factually distinct new allegations first raised in another case is indistinguishable from filing a new action based on already-filed allegations, which is prohibited by § 3730(b)(5). Because Plaintiff was not the first-to-file regarding fraudulent and deficient repair of containers and rolling stock, Plaintiff's claims related to the fraudulent and deficient repair of containers and rolling stock are DISMISSED. See 31 U.S.C. § 3730(b)(5).

**D.   Claims related to ARI Plants Other than Auburn, Washington.**

The Plaintiff's Second Amended Complaint contains allegations related to ARI plants in locations other than the Auburn, Washington. Plaintiff alleges that other plants engaged in fraudulent conduct in violation of § 3729. Defendant claims that Plaintiff has failed to state the "circumstances constituting fraud" at other plants with particularity, and has failed to comply with the heightened pleading requirements of Rule 9(b).

Plaintiff's Second Amended Complaint alleges that

> [f]alse claims were also initiated at ARI's other MTESC facilities. They include Long Island, New York, Springfield, Massachusetts, Minneapolis, Minnesota, Philadelphia, Pennsylvania, and San Francisco, California.

Second Am. Compl., docket no. 84, ¶ 4.37. Defendant notes that the Second Amended Complaint does not specifically identify any improper conduct, or individuals engaged in improper conduct, beyond the general assertion that fraudulent conduct in violation of § 3729 was widespread at ARI.

In Response, Plaintiff notes his contention that "fraud perpetrated by ARI was systematic and was not limited to the Auburn facility." Pl.'s Resp., docket no. 87, at 8. Plaintiff alleges that the nature of the work performed by ARI did not materially differ from plant to plant, and that replacarded orders were frequently transferred between plants. Id. However, alleged fraudulent activity at one plant does not prove fraudulent activity at

ORDER   9–

another plant. Similarly, allegations related to one location do not meet the pleading requirements of Rule 9(b) for other locations. Plaintiff provides no details of the alleged fraud at other plants and the heightened pleading requirements of Rule 9(b) require specific allegations of fraud. A generalized fraud allegation against other ARI facilities does not comport with the pleading requirements of the Federal Rules. Because Plaintiff has failed to allege any details, or involved individuals, or specific information relating to fraud at other plants, Plaintiff's claims relating to ARI plants other than Auburn, Washington, are DISMISSED.

**E.     Claims related to Marty Senack.**

The Plaintiff's Second Amended Complaint contains allegations related to Marty Senack, a Vice President at ARI. Plaintiff alleges that "Mr. Senack took action, ordered and encouraged others to take actions that worked to defraud the Postal Service." Second Am. Compl., docket no. 84, ¶ 3.4. Plaintiff alleges that after he informed Mr. Senack of the fraudulent practice of replacarding, Mr. Senack told him that he would "take care" of the problem. Id. ¶ 4.18. Plaintiff further alleges that an hour later, Mr. Senack called him back to inform him the case was "closed," he did not "need to worry," and should "forget about it." Id. ¶ 4.19. Plaintiff also alleges that Mr. Senack "played a key role in connection with the fraud perpetrated by ARI" and was "the operative link between ARI's nationwide MTESC facilities." Pl.'s Resp., docket no. 87, at 9. Plaintiff urges the Court to infer that "Mr. Senack was aware of the situation and discouraged Mr. Harris from pursuing the subject further." Id.

Defendants argue that the Second Amended Complaint fails to provide sufficient detail about Mr. Senack's alleged involvement with the fraudulent conduct to comport with the pleading requirements of Rule 9(b). The Court agrees. The Second Amended Complaint fails to allege any wrongdoing by Mr. Senack, other than his employment at ARI and his alleged deficient handling of the Plaintiff's fraud allegations. The Complaint does not allege,

ORDER  10–

1  nor does Plaintiff claim beyond a generalized allegation, that Mr. Senack had any
2  involvement in the alleged fraudulent replacarding activities.  The Court cannot "infer"
3  participation in the alleged fraudulent conduct in Auburn, Washington, by Mr. Senack, who
4  was based in Texas.  Plaintiff's claims against Mr. Senack are therefore DISMISSED.

**F.     Dismissal with Prejudice.**

Having determined to dismiss several of Plaintiff's claims, including those relating to § 3729(a)(3), containers and rolling stock, other plants, and Marty Senack, the Court must determine whether the dismissal should be with prejudice.  Rule 15(a) allows that "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).   Defendant sought dismissal with prejudice, and Plaintiff has not sought leave to amend.

Leave to amend should be granted unless the district court "determines that the pleading could not possibly be cured by the allegation of other facts." SmithKline Beecham, 245 F.3d at 1052.  In assessing whether leave to amend is proper, the Court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."  Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir.1989).  These factors, however, are not given equal weight.  Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir.1995).  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."  Id.

In this case, there is no pending motion to amend and the Court dismisses the identified claims with prejudice. The deficiencies in Plaintiff's Second Amended Complaint were previously identified by Defendant.  See Motion to Dismiss, docket no. 60.  The Court granted the Defendant's previous motion to dismiss, with leave to amend, but Plaintiff failed to cure the deficiencies now at issue in this case.  Accordingly, the Court must conclude that Plaintiff is unable to allege facts in support of the theories at issue and that dismissal with prejudice is appropriate.  Plaintiff appears to have no knowledge of any facts related to

ORDER  11−

fraudulent activity at other plants, improper conduct by ARI Vice President Marty Senack, or a conspiracy among other MTESC Contractors.

Plaintiff's claims are therefore DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated in this Order, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion to Dismiss, docket no. 85. The Court DENIES the Defendant's Motion to Dismiss as it relates to Plaintiff's claims under § 3729(a)(2). The Court DISMISSES WITH PREJUDICE Plaintiff's claims under § 3729(a)(3), Plaintiff's claims related to fraudulent repair of containers and rolling stock, Plaintiff's claims relating to ARI plants in other locations, and Plaintiff's claims relating to Vice President Marty Senack.

IT IS SO ORDERED.

DATED this 20th day of December, 2006.

*Thomas S. Zilly*
THOMAS S. ZILLY
UNITED STATES DISTRICT JUDGE

ORDER  12–